**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Frank M. Haynie, | ) Case No. 2:25-cv-05331-RMG-MGB |
|         Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Gayle Karolczyk; Laura H. Clark; Michael Crosett; and MLPF&S, | ) |
|         Defendants. | ) |

Plaintiff Frank M. Haynie, proceeding *pro se*, brings this civil action alleging breach of fiduciary duty in relation to the purported mismanagement of his late mother's estate. (Dkt. No. 1.) Under Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review this case and submit findings and recommendations to the assigned United States District Judge. For the reasons discussed below, the undersigned finds that the Court lacks subject matter jurisdiction over Plaintiff's Complaint and therefore recommends that this action be summarily dismissed without leave to amend.

## **BACKGROUND**

Plaintiff is "a retired SEC registered investment advisor and municipal bond hedge fund manager." (Dkt. No. 1 at 3.) In 1997, he took over the management of his mother's estate, which was valued at approximately $610,000 after taxes. (*Id.*) Plaintiff claims that "[o]ver the next 10 years, [he] increased the estate to about $1.6 million." (*Id.*) In late 2007, Plaintiff's mother decided to transfer the management of her assets to Merrill Lynch. (*Id.*) Plaintiff claims that when he "relinquished control of the account in 2007, along with a substantial amount of cash[,] [his

mother] had approximately $400,000 in municipal bonds and $200,000 in bank CDs. The account was earning close to $50,000 a year." (Dkt. No. 1-3 at 1.)

In 2013, a trust was apparently created naming Plaintiff's sister, Defendant Gayle Karolczyk, as "the trustee with full investment authority" over their mother's estate, which was then valued at $722,758. (Dkt. No. 1 at 3–4.) Defendant Karolczyk "delegated management to [her] Merrill Lynch advisor, [Defendant] Laura Clark, who charged for professional management." (*Id.* at 4.) When Plaintiff's mother died in 2024, her "account was liquidated and $775,000 was distributed to the beneficiaries," including Plaintiff. (*Id.* at 4.)

Plaintiff now brings this civil action challenging the management of his mother's estate, arguing that "the market quadrupled in the 11 years since the defendants managed it," such that the beneficiaries "could reasonably expect the estate to be near $3,000,000." (*Id.*) Although Plaintiff has little information regarding the specific "workings of the account" while under Defendants' management (Dkt. No. 1-1 at 1), he notes that they "took $725,000 to less than $800,000 in 10 years while charging substantial management fees and no market disasters to contend with." (Dkt. No. 1-3 at 1; *see also* Dkt. No. 1-1 at 1, asserting that Plaintiff's mother "paid a lot of money to lose money" at Merrill Lynch.) "[O]ther than the bonds [Plaintiff] bought years earlier, the assets [apparently] remained in a Merrill Lynch money market account for years," in violation of "the Prudent Investor Rule." (Dkt. No. 1 at 4.) Plaintiff therefore argues that "[t]he core issue" here is a "breach of fiduciary duty," which Defendants owed to Plaintiff as a beneficiary of his mother's estate. (*Id.*) He contends that his sister owed "an even higher duty to [him] via Unified Trust Law." (*Id.*)

In addition to these claims, the Complaint states that "[t]here is strong circumstantial evidence that there was a Civil Conspiracy to defraud [Plaintiff] whereby the Trust account paid

management fees that were actually used for management of [Defendant Karolczyk's] substantial personal accounts." (*Id.*; *see also* Dkt. No. 1-1 at 1, "speculating" that the estate was being used to "pay[ ] for the management" of Defendant Karolczyk's "mulit-million dollar trading account with [Defendant] Clark.") Plaintiff suggests that while the "amount in controversy" here exceeds $2 million, Defendants' "actions are so egregious that some sort of punitive or exemplary damages are [also] expected." (*Id.* at 3–4.)

## **LEGAL STANDARD**

The court possesses the inherent authority to review a *pro se* complaint to ensure that the plaintiff has standing, that federal jurisdiction exists, and that the case is not frivolous, even where the plaintiff has paid the filing fee. *See Hamilton v. United States*, No. 2:20-cv-1666-RMG-MHC, 2020 WL 7001153, at *1 (D.S.C. Aug. 26, 2020), *adopted*, 2020 WL 5939235 (D.S.C. Oct. 7, 2020) ("It is well established that a court has broad inherent power *sua sponte* to dismiss an action, or part of an action, which is frivolous, vexatious, or brought in bad faith.") (internal citations omitted); *see also Harley v. United States*, 349 F. Supp. 2d 980, 981 (M.D.N.C. 2004) (noting that the court must consider whether the complaint asserts a plainly meritless legal theory or alleges clearly unbelievable facts); *Ross v. Baron*, 493 F. App'x. 405, 406 (4th Cir. 2012) (per curiam).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is therefore charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the requirement of liberal construction does not mean that the court must ignore a clear failure to allege facts that set forth a cognizable claim in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d

387, 390–91 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for all civil actions).

## DISCUSSION

Federal courts are courts of limited jurisdiction, meaning they possess only that power authorized by Article III of the United States Constitution and affirmatively granted by federal statute. *Willy v. Coastal Corp.,* 503 U.S. 131, 136–37 (1992). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists "and to dismiss the action if no such ground appear." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his or her pleadings. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir. 1985) ("[P]laintiffs must affirmatively plead the jurisdiction of the federal court."). Thus, Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that the complaint provide "a short and plain statement of the grounds for the court's jurisdiction. . . ."

There are two primary bases for exercising original federal jurisdiction: (1) "diversity of citizenship," under 28 U.S.C. § 1332; and (2) "federal question," under 28 U.S.C. § 1331. If a federal district court has original jurisdiction over a civil action, it may also exercise supplemental jurisdiction over any state law claims that are "so related" to the claims under the court's original jurisdiction "that they form part of the same case or controversy." *Id.* § 1367(a). Without original jurisdiction, however, a federal court generally cannot exercise supplemental jurisdiction over state law claims. *See id.* § 1367(c)(3) (stating that the district court may decline to exercise supplemental

jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction).

Here, Plaintiff invokes "diversity of citizenship" as the basis for jurisdiction. (Dkt. No. 1 at 3.) The diversity statute, 28 U.S.C. § 1332(a), requires that the plaintiff demonstrate complete diversity of parties and an amount in controversy in excess of $75,000. Complete diversity of parties means that no party on one side may be a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 (1978); *see also Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (noting that diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant"). In the instant case, the Complaint indicates that Plaintiff, Defendant Karolczyk, Defendant Clark, and Defendant Crosett are all citizens of South Carolina. (Dkt. No. 1 at 1–2; *see also* Dkt. No. 3.) Consequently, diversity of citizenship does not exist, and the Court cannot exercise diversity jurisdiction over this case.

Because Plaintiff cannot invoke diversity jurisdiction under § 1332, the Court now turns, in an abundance of caution, to federal question jurisdiction. Under § 1331, the plaintiff must allege a cause of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he complaint must, however, contain allegations affirmatively and distinctly establishing federal grounds not in mere form, but in substance and not in mere assertion, but in essence and effect." *Burgess v. Charlottesville Savings and Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973) (internal quotation marks and citations omitted). In other words, federal jurisdiction requires "more than a simple allegation that jurisdiction exists or citation to a federal statute, and a mere allegation that a federal statute has been violated is not sufficient to invoke federal jurisdiction."

*Brantley v. Nationstar Mortg. LLC*, No. 9:19-cv-490-BHH-BM, 2019 WL 8918793, at *3 (D.S.C. Oct. 8, 2019), *adopted*, 2020 WL 1181309 (D.S.C. Mar. 11, 2020) (internal citations omitted).

Plaintiff appears to allege strictly state law causes of action. As stated above, the Complaint's central claim is that "[D]efendants owe[d] a fiduciary duty to the plaintiff [as] a beneficiary of [his mother's] estate" and breached that duty in their purported mismanagement of the same. (Dkt. No. 1 at 4.) However, "it is settled that a claim of 'breach of fiduciary duty' is a state-law-based claim, not a federal claim." *See Smalley v. S. C. Elec. Cooperatives/Aiken Cnty. Elec.*, No. 1:15-cv-4033-JFA-KDW, 2015 WL 10097523, at *3 (D.S.C. Oct. 29, 2015), *adopted*, 2016 WL 613887 (D.S.C. Feb. 16, 2016) (collecting cases).

To the extent Plaintiff suggests that his sister, Defendant Karolcyzk, owed him some sort of fiduciary duty pursuant to "Unified Trust Law" (Dkt. No. 1 at 4), Plaintiff is likely referring to the Uniform Trust Code ("UTC"), which was drafted by the National Conference of Commissioners on Uniform State Laws "to provide uniform guidance on issues of trust law, particularly in jurisdictions in which the law of trusts was sparse." 68 A.L.R.7th Art. 1 (2021). Notably, the UTC is simply "a model for codifying the law on trusts, not an actual law on which a claim can be based." *Harper v. Deutsche Bank*, No. 3:15-cv-889-EMC-DMR, 2015 WL 2251329, at *2 (N.D. Cal. Mar. 19, 2015), *adopted*, 2015 WL 2265408 (N.D. Cal. Apr. 3, 2015). To that end, "[t]he South Carolina Trust Code, located in Article 7 of the South Carolina Probate Code, was revised effective January 1, 2006, to comport with the Uniform Trust Code." *Jackson v. Mercantile Safe Deposit & Tr. Co.*, No. 3:07-cv-2707-JFA, 2008 WL 11349735, at *2 (D.S.C. June 24, 2008). Any claims Plaintiff brings pursuant to the UTC therefore fall under South Carolina law and do not provide a federal cause of action here.

6

Finally, Plaintiff surmises that Defendants engaged in a "civil conspiracy" to "defraud" him by charging and paying "management fees that were actually used for management of [Defendant Karolczyk's] substantial personal accounts." (Dkt. No. 1 at 4.) Notwithstanding the speculative nature of these allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible" under Rule 8, Fed. R. Civ. P.), the Complaint does not clarify whether Plaintiff raises this conspiracy claim as a constitutional violation under 42 U.S.C. § 1983 or a violation under state common law. However, an actionable civil conspiracy under § 1983 must be committed by persons "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (holding that purely private conduct, "no matter how wrongful, injurious, fraudulent, or discriminatory," does not provide a basis for action under § 1983). Because none of the Defendants are state actors, Plaintiff cannot bring a cognizable civil conspiracy claim under § 1983 and must instead raise such allegations pursuant to state common law. In short, Plaintiff's civil conspiracy claim does not provide a basis for federal question jurisdiction.

In fact, the only reference to any sort of federal authority in the Complaint appears where Plaintiff notes that he attempted to obtain documents regarding Defendants' management of his mother's assets through a "FINRA action" in 2024. (Dkt. No. 1 at 4.) The Financial Industry Regulatory Authority ("FINRA") is a registered, self-regulatory organization authorized under the Securities Exchange Act of 1934 that has "the authority to exercise comprehensive oversight over all securities firms that do business with the public." *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 322 (4th Cir. 2013) (internal quotation marks and citations omitted); *see also* Notice, 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007) (noting that in 2007, the National Association of Securities

Dealers, Inc. merged with the New York Stock Exchange's regulation committee to form FINRA). However, FINRA regulations do not give rise to a private right of action. *See Smith v. INTL FCStone Fin., Inc.*, No. 2:19-cv-235, 2020 WL 908437, at *4 (S.D.W. Va. Feb. 25, 2020) ("While the resolution of Petitioners' underlying claims will require reference to FINRA rules, FINRA itself provides no private right of action."); *see also Howes v. Fin. Indus. Regul. Auth., Inc.*, No. 8:18-cv-3094-DKC, 2023 WL 2213688, at *4 (D. Md. Feb. 24, 2023) (collecting cases). Thus, while Plaintiff's mere reference to FINRA is not sufficient to invoke federal question jurisdiction, any such regulations fail to provide a cognizable cause of action in the first instance.

Based on the above, the undersigned simply cannot identify a cognizable federal claim or controversy from the pleadings. Indeed, even if Defendants mismanaged Plaintiff's mother's assets as alleged in the Complaint, Plaintiff's frustrations sound in state law only, and without original jurisdiction, the Court cannot exercise supplemental jurisdiction over such claims. *See* 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction); *see also Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants."). Because Plaintiff has not alleged complete diversity of parties or a valid federal cause of action, the undersigned finds that the Court lacks subject matter jurisdiction over this action.

## CONCLUSION

Based on the above, the undersigned is of the opinion that Plaintiffs cannot cure the deficiencies in the Complaint, and this action is therefore subject to summary dismissal for lack of federal subject matter jurisdiction. *See Domino Sugar Corp. v. Sugar Workers Local Union 392 of*

8

*United Food and Commercial Workers Int'l Union*, 10 F.3d 1064 (4th Cir. 1993). Accordingly, the undersigned **RECOMMENDS** that this action be **DISMISSED** without leave to amend.

    **IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 31, 2025
Charleston, South Carolina

    **The parties' attention is directed to an important notice on the following page.**